UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

BRYAN LAMBERT,

Index No.

Plaintiff,

**COMPLAINT**

-against-

**DEMAND FOR JURY TRIAL**

TRUMP INTERNATIONAL HOTEL AND TOWER,
FRANCIS CALDERON and THOMAS AHEARN

Defendants.

------------------------------------------------------------X

Plaintiff, Bryan Lambert ("Plaintiff"), by and through his attorneys, Ballon Stoll Bader &

Nadler, P.C., complaining of Defendants, Trump International Hotel and Tower ("Trump

International"), Francis Calderon ("Calderon"), and Thomas Ahearn ("Ahearn") (collectively the

"Defendants"), alleges with personal knowledge, unless where upon information and belief is

stated, the following:

1.      This action is brought to remedy the Defendants' intentional, unlawful

discrimination (due to race, national origin, and disability), harassment, and retaliation against

Plaintiff, creating and allowing a hostile work environment, based on race, national origin and

disability, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. §§ 2000e et seq. ("Title VII"), 42 U.S.C. §§ 1981, 1983, and 1985, the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 et seq., the Executive Law of the State of New

York, New York State Human Rights Law ("Executive Law") § 296, et seq., and the

Administrative Code of the City of New York, New York City Human Rights Law

("Administrative Code"), § 8-101, et seq.

## THE PARTIES

2.      Plaintiff is a 27-year-old African-American (black, male, and a native of the country of Jamaica).

3.      Plaintiff resides in the County, City and State of New York.

4.      Trump International is a corporation organized under the laws of the State of New York.

5.      Trump International is a luxury hotel and apartment building located in the borough of Manhattan, City of New York, State of New York.

6.      Trump International's principal place of business is One Central Park West, New York, New York 10023.

7.      Upon information and belief, Defendant Ahearn (a Caucasian) is a resident of the state of New York.

8.      At all relevant times, Ahearn was a security guard at Trump International with the title of House Officer, similar to that of Plaintiff.

9.      Upon information and belief, Defendant Francis Calderon (a Hispanic male) is a resident of the state of New York

10.     At all relevant times, Calderon was the Assistant Front Desk Manager / Night Manager at Trump International.

11.     At all relevant times, Calderon was the supervisor of Plaintiff's supervisors.

## PROCEDURAL BACKGROUND

12.     On or about September 13, 2014, Plaintiff timely filed a charge of discrimination against Defendants (Charge No. 520-203-03043) with the State of New York Division of Human Rights ("DHR") in which he alleged, *inter alia*, that Defendants discriminated against him on the

basis of race, national origin, disability, and retaliation in violation of New York State Executive Law § 296(1)(a) et seq.

13.     On or about August 26, 2013, Plaintiff timely filed a charge of discrimination against Defendants (Charge No. 520-203-03043) with the Equal Employment Opportunity Commission ("EEOC") alleging race, national origin, disability, and retaliation discrimination.

    a.    Upon request from Plaintiff, the EEOC terminated its investigation, and on November 3, 2014, issued Plaintiff a Notice of Right to Sue (see Exhibit 1, attached hereto);

    b.    The instant action is timely because it is initiated within ninety (90) days of Plaintiff's receipt of the aforementioned Notice of Right to Sue; and

    c.    Plaintiff has exhausted his federal administrative remedies as concern the allegations of this Complaint.

## JURISDICTION and VENUE

14.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 as this action arises under the laws of the United States.

15.     This Court has supplemental (pendent) jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a). The New York State and New York City discrimination claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) as events occurred in the Southern District of New York.

17.     Plaintiff is domiciled in the City of New York, borough of Manhattan, State of New York.

18.    The principal place of business of Trump International is One Central Park West, New York, New York 10023.

19.    Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII.

## FACTS

### General Information

20.    Plaintiff commenced employment with Trump International in December of 2011.

21.    From December of 2011 to present, Plaintiff has been employed as a security guard at Trump International with the title of House Officer.

22.    On or about July of 2014, while working at Trump International, Plaintiff had a salary of approximately $50,000.00 per year.

23.    As a House Officer, Plaintiff worked at least 5 shifts per week of 8 hours per shift.

24.    Plaintiff's usual schedule was Saturday through Wednesday, from 4pm to 12am, although it varied.

25.    Plaintiff was also overtime eligible, earning approximately $40/hour for any overtime hours worked.

26.    Because Plaintiff worked different shifts on different days, he had many supervisors.

27.    Since on or about July 29, 2014, Plaintiff has been out injured on workers' compensation because of a job-related injury.

28.    Plaintiff performed his job at or above expectations at all times.

29.    Ahearn was a colleague of Plaintiff, having the same position, and often having the same working schedule (shift) as Plaintiff.

## Hostile Work Environment

30.     Throughout Plaintiff's tenure of working at Trump International, Plaintiff was the victim of persistent derogatory racial remarks and actions due to his race (Black/African-American).

31.     In or about April of 2013, Ahearn started making racist comments to and about Plaintiff.

32.     For example, in or about April 2013, after a white male employee, John D., was terminated, while in Plaintiff's presence and referring to John D., Ahearn stated, in sum and substance, "If he were black, he would not have been fired."

33.     The day after Ahearn made this comment, Plaintiff reported Ahearn to one of Plaintiff's supervisors, Young Wang.

34.     Young Wang advised Plaintiff that he (Young Wang) would talk to Ahearn.

35.     Later in or about April 2013, Ahearn also stated directly to Plaintiff, in sum and substance, "all you mother-fucking immigrants are coming to this country, fucking us up, and taking our jobs."

36.     Plaintiff responded he did not want to talk and walked away.

37.     The day after Ahearn made this comment, Plaintiff reported Ahearn to one of Plaintiff's supervisors, Young Wang.

38.     Young Wang advised Plaintiff to tell supervisor Tony Wang or Human Resources.

39.     Plaintiff immediately advised supervisor Tony Wang.

40.     Tony Wang responded, in sum and substance, "There is nothing I can do at this moment. There is something going on with his (Ahearn's) father."

41.     Plaintiff, not satisfied, complained to the Vice President of Human Resources, Deirdre Rosen ("Rosen").

42.     Plaintiff requested that Rosen change Plaintiff's shift.

43.     Rosen refused to change Plaintiff's shift.

44.     Rosen then advised Plaintiff, in sum and substance, "Stick it out and work together. It's not about you. It's about the job."

45.     Later in or about April 2013, Ahearn also stated to Plaintiff and others, in sum and substance, "See you later my dark-skinned friends."

46.     The day after Ahearn made this comment, Plaintiff reported Ahearn to one of Plaintiff's supervisors, Young Wang.

47.     Young Wang advised Plaintiff to tell supervisor Tony Wang.

48.     Because Tony Wang was not working that day, Plaintiff advised Tony Wang the next day.

49.     Tony Wang told Plaintiff to go to Human Resources.

50.     Again, Plaintiff complained to Rosen at Human Resources.

51.     Human Resources promised Plaintiff that they would investigate the situation.

52.     Later in or about April 2013, Rosen advised Plaintiff that they investigated the comments and found them to be true, but that she would not change Plaintiff's shift or take any other ameliorative action to remove Plaintiff from being subjected to these comments.

### Retaliation

53.     On or about August 26, 2013, Plaintiff filed an EEOC charge of discrimination and retaliation.

54.     After Plaintiff filed with the EEOC, Defendants began a campaign of retaliation against Plaintiff.

### The False Write-Up

55.     In October of 2013, only 2 months after Plaintiff filed the EEOC charge, Rosen gave Plaintiff a "write-up" for constantly being absent.

56.     This write-up was false as Plaintiff had been in excellent attendance but for days in which he was sick and presented doctor's notes.

57.     Rosen threatened Plaintiff (via Nick Andrew, Plaintiff's union representative) that she would withdraw the "write up" if Plaintiff dropped the EEOC charge.

58.     Plaintiff felt threatened, but did not withdraw the EEOC charge.

59.     There was never any resolution to the write-up as it, upon information and belief, remains in Plaintiff's file.

### Vacation Time Denials

60.     Upon information and belief, Trump International has a policy of awarding vacation requests to House Officers based upon their seniority (tenure) at Trump International.

61.     In or about November and December of 2013, Plaintiff made approximately 3 requests for his entitled vacation time to Sal Blando, the Director of Security, for 3, 2, and 1 day(s) off, respectively.

62.     All of these requested were denied.

63.     Upon information and belief, vacation requests were granted to similarly situated employees of Plaintiff but with less seniority, such as Mohammed Benabou.

64.     Plaintiff's requests for vacation were denied due to unlawful discrimination as well as retaliation for Plaintiff's complaints and EEOC complaint.

Overtime Denials

65.     Upon information and belief, Trump International has a policy of awarding the option to work and be paid overtime to House Officers based upon their seniority (tenure) at Trump International.

66.     Before Plaintiff filed his EEOC charge, Plaintiff often worked at least one shift of overtime per week.

67.     From in or about late December 2013 through March 2014, Plaintiff made approximately 6 requests to work an overtime shift.

68.     All of these requested were denied.

69.     Mohammed Benabou, a House Officer with less seniority than Plaintiff, often requested overtime for the same weeks as Plaintiff.

70.     Upon information and belief, Benabou's requests were granted on all days.

71.     Plaintiff's requests for overtime were denied due to unlawful discrimination as well as retaliation for Plaintiff's complaints and EEOC complaint.

Hotel Room Denials

72.     Trump International has 3 shifts per day for its House Officers: 12am to 8am, 8am to 4pm, and 4pm to 12am.

73.     It is common practice for Trump International to give hotel rooms, based upon seniority, to House Officers who work 2 shifts separated by only 8 hours, such as a 4pm to 12am shift followed by an 8am to 4pm shift the following day, or a 12am to 8am shift followed by a 4pm to 12am shift later that same day, so House Officers can sleep for up to 8 hours between shifts and not have to travel to and from their homes during such time.

74.     On December 3, 2013, Plaintiff worked the 8am to 4pm shift.

75.     At or about 4pm on that day, Plaintiff learned that someone called out sick for the 4pm to 12am shift.

76.     Plaintiff was assigned to cover the 4pm to 12am shift on that day.

77.     On December 4, 2013, Plaintiff was scheduled to work the 8am to 4pm shift.

78.     On December 3, 2013, at or about 11:59pm, Plaintiff requested a hotel room from Calderon so he could sleep after his double shift (8am to 12am = 16 hours), which was going to be followed by a regular shift only 8 hours later (8am to 4pm).

79.     Calderon denied Plaintiff's request for a hotel room.

80.     Mohammed Benabou, a House Officer with less seniority than Plaintiff, with the same schedule on this day as Plaintiff, submitted a request for a hotel room.

81.     Calderon granted Benabou's request.

82.     On this day, Plaintiff had to go home after working 16 consecutive hours, only to return to work for his next shift that started only 7 hours later.

83.     On Sunday December 8, 2013, Plaintiff worked the 4pm to 12am shift and was scheduled to work the 8am to 4pm shift the following day.

84.     Following the end of his first shift, Plaintiff submitted a request for a hotel room.

85.     Calderon denied Plaintiff's request for a hotel room.

86.     Mohammed Benabou, a House Officer with less seniority than Plaintiff, with the same schedule on this day as Plaintiff, submitted a request for a hotel room.

87.     Calderon granted Benabou's request.

88.     On this day, Plaintiff had to go home, only to return to work for his next shift that started only 7 hours later.

89.    Upon information and belief, Plaintiff's requests for hotel rooms were denied due to unlawful discrimination as well as retaliation for Plaintiff's complaints and EEOC complaint.

### The Locker Vandalism

90.    In or about March of 2014, Plaintiff went to work one morning and found his locker opened.

91.    Plaintiff's locker had grease on it and a sticker/poster on the front with a black and white face.

92.    Plaintiff reported this incident to a supervisor, Tony Wang.

93.    Tony Wang directed Plaintiff to Human Resources.

94.    Plaintiff went to Human Resources, spoke with Rosen and Keisha Purcell, and made a formal complaint.

95.    Plaintiff also advised Human Resources that he did not feel safe and that he needed another locker.

96.    Rosen denied Plaintiff's requests and ignored his complaints.

97.    Plaintiff's requests were denied due to unlawful discrimination as well as retaliation for Plaintiff's complaints and EEOC complaint.

### **Plaintiff's Disability**

98.    Upon information and belief, Trump International has a policy that its male employees must be neatly shaven.

99.    At all relevant times, Plaintiff has and had a disability known as Folliculitis Barbae Traumatica[1].

---

[1] Better referred to as "Pseudofolliculitis barbae" (colloquially known as "Barber's Itch"), Folliculitis Barbae Traumatica involves acute and chronic inflammation of hair follicles caused by ingrown hairs. It is more common in African-Americans or ethnicities with coarse hair, and it is activated and irritated by shaving of the face.

100.    Starting in or about April of 2014, Calderon ordered Plaintiff that he must shave his face every day.

101.    Calderon did not order any other employees to shave their face every day.

102.    Plaintiff advised Calderon that he had a disability of a chronic skin medical condition that would be severely irritated if he had to shave every day and asked for the reasonable accommodation of not being required to shave.

103.    Notwithstanding, Calderon ordered Plaintiff to shave every day anyway.

104.    Calderon stated to Plaintiff, in sum and substance, "You are not special" and "Why can't you look more like Christine?" (Christine is an Asian-American woman who works at the front desk at Trump International).

105.    Plaintiff felt forced to comply, so Plaintiff shaved his face that day while at work and every day thereafter.

106.    Immediately following shaving, Plaintiff's face suffered a severe irritation reaction to shaving, due to his disability.

107.    In or about May of 2014, Plaintiff again asked Calderon for the reasonable accommodation of not shaving, due to his disability.

108.    Calderon denied Plaintiff's request.

109.    Plaintiff felt forced to comply, so Plaintiff shaved his face that day while at work and every day thereafter.

110.    Immediately following shaving, Plaintiff's face suffered a severe irritation reaction to shaving, due to his disability.

111. On June 9, 2014, Dr. Toni Field, Plaintiff's doctor, provided Plaintiff with a doctor's note ("Dr. Field's Note"), stating, "Bryan Lambert has a chronic skin condition and is advised not to shave his beard until the condition is resolved."

112. On or about June 10, 2014, Plaintiff mailed Dr. Field's Note to Human Resources.

113. On or about June 11, 2014, Plaintiff presented Dr. Field's Note to Calderon, and asked Calderon for the reasonable accommodation of not being required to shave due to his disability.

114. Notwithstanding Dr. Field's Note and knowledge of Plaintiff's disability, Calderon ordered Plaintiff to shave anyway.

115. Plaintiff felt forced to comply, so Plaintiff shaved his face that day while at work and every day thereafter.

116. Immediately following shaving, Plaintiff's face suffered a severe irritation reaction to shaving, due to his disability.

117. On or about June 14, 2014, having previously presented Dr. Field's Note to Calderon, Plaintiff asked Calderon for the reasonable accommodation of not being required to shave due to his disability.

118. Notwithstanding Dr. Field's Note and knowledge of Plaintiff's disability, Calderon ordered Plaintiff to shave anyway.

119. Plaintiff felt forced to comply, so Plaintiff shaved his face that day while at work and every day thereafter.

120. Immediately following shaving, Plaintiff's face suffered a severe irritation reaction to shaving, due to his disability.

121.    On July 7, 2014, Dr. Dora Soybelman, Plaintiff's doctor, provided Plaintiff with a doctor's note, stating:

> To Whom it may concern
> Please be advised that Mr. Lambert, Bryan, DOB – 2/23/87 suffers from folliculitis barbae traumatica and daily shaving exacerbates this condition. If you have any questions, please contact me at [phone number]

122.    On or about July 7, 2014, Plaintiff mailed the above-referenced doctor's note ("Dr. Soybelman's Note") to Calderon's manager, Prince Saunders, as well as to Human Resources, and asked Calderon for the reasonable accommodation of not being required to shave due to his disability.

123.    Notwithstanding Dr. Soybelman's Note and knowledge of Plaintiff's disability, Calderon ordered Plaintiff to shave anyway.

124.    Plaintiff felt forced to comply, so Plaintiff shaved his face that day while at work and every day thereafter.

125.    Immediately following shaving, Plaintiff's face suffered a severe irritation reaction to shaving, due to his disability.

126.    On July 3, 2014, Plaintiff wrote a letter to Ms. Suzie Mills, General Manager of Trump International, complaining about the aforementioned shaving incidents.

127.    Mills took no steps to resolve the situation.

<u>Plaintiff Being Called "Gay"</u>

128.    In or about July of 2014, a bellman at Trump International, Fernando (last name unknown), called Plaintiff "gay" in a derogatory manner.

129.    Plaintiff asked Fernando to stop harassing him.

130.    Fernando continued to call Plaintiff "gay" in a derogatory manner.

131.    Plaintiff complained to Calderon.

132.    Calderon directed Plaintiff to Human Resources.

133.    Plaintiff filed a complaint with Human Resources, both in person and in writing via certified mail.

134.    Human Resources advised Plaintiff that they would investigate the situation.

135.    Plaintiff never received any response.

### Physical Threat

136.    In or about July of 2014, Plaintiff was threatened by one of his supervisors, Tom Rich (an Asian-American male).

137.    Tom Rich stated to Plaintiff, in sum and substance, "You think you're tough? You aren't untouchable. They don't have to shoot you. You could be paralyzed."

138.    Plaintiff has lived in fear from work every day since then.

### Increased Workload

139.    In or about July of 2014, while Plaintiff's EEOC complaint was still pending, Plaintiff's supervisors gave Plaintiff more work than any other House Officer.

140.    This increased workload included lifting heavy boxes, only without assistance from others, as would normally happen.

141.    Upon information and belief, Plaintiff was given this increased workload in retaliation for Plaintiff's complaints and EEOC complaint.

142.    On or about July 29, 2014, as a result of this increased workload and having to lift heavy boxes alone, Plaintiff became injured on the job.

143.    Plaintiff has been unable to work since this injury.

## FIRST CAUSE OF ACTION
### Discrimination Based Upon Race in Violation of
### Title VII, 42 U.S.C. 2000e et seq.
### (As Against All Defendants)

144.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

145.    At all relevant times, Trump International was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), because such entity had more than fifteen employees.

146.    At all relevant times, Plaintiff was a "person" within the meaning of Title VII, 42 U.S.C. § 2000e.

147.    The discriminatory actions of the Defendants were invidious and repugnant.

148.    Defendants discriminated against Plaintiff on the basis of his race (black/African-American) in violation of Title VII by treating him differently from and less favorably than similarly situated employees, and subjecting him to disparate working conditions and other disparate terms and conditions.

149.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

150.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and

emotional distress, including, but not limited to, depression and humiliation, embarrassment, and degradation in front of Trump International personnel.

151.   The Defendants caused Plaintiff a tremendous amount of unnecessary stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of compensatory and monetary damages and other relief.

152.   The Defendants' discriminatory actions in violation of Title VII were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

153.   That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**SECOND CAUSE OF ACTION**
**Discrimination Based Upon National Origin in Violation of**
**Title VII, 42 U.S.C. 2000e et seq.**
**(As Against All Defendants)**

154.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

155.   At all relevant times, Trump International was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), because such entity had more than fifteen employees.

156.    At all relevant times, Plaintiff was a "person" within the meaning of Title VII, 42 U.S.C. § 2000e.

157.    The discriminatory actions of the Defendants were invidious and repugnant.

158.    Defendants discriminated against Plaintiff on the basis of his national origin (Jamaican) in violation of Title VII by treating him differently from and less favorably than similarly situated employees, and subjecting him to disparate working conditions and other disparate terms and conditions.

159.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

160.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, embarrassment, and degradation in front of Trump International personnel.

161.    The Defendants caused Plaintiff a tremendous amount of unnecessary stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of compensatory and monetary damages and other relief.

162.    The Defendants' discriminatory actions in violation of Title VII were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

163.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**THIRD CAUSE OF ACTION**
**Discrimination Based Upon Race in Violation of**
**New York City Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

164.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

165.    Plaintiff is a "person" within the Administrative Code Sec. 8-102(1) et seq.

166.    Defendants discriminated against Plaintiff on the basis of his race (black/African-American) in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code) by treating him differently from and less favorably than similarly situated employees who were not black/African-American, and subjecting him to disparate working conditions and other disparate terms and conditions.

167.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

168.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to

suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

169.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

170.   That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**FOURTH CAUSE OF ACTION**
**Discrimination Based Upon National Origin in Violation of**
**New York State Human Rights Law**
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

171.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

172.   At all relevant times, Trump International was an "employer" within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it had more than four (4) persons in its employ at all relevant times.

173.   Plaintiff is an "employee" within the meaning of Executive Law § 292(6).

174.   Defendants discriminated against Plaintiff on the basis of his national origin (Jamaican) in violation of the New York State Human Rights Law by treating him differently

from and less favorably than similarly situated employees who were not Jamaican, and by subjecting him to disparate working conditions and other disparate terms and conditions.

175.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

176.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

177.   That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## FIFTH CAUSE OF ACTION
### Discrimination Based Upon Disability in Violation of the Americans with Disabilities Act ("ADA")
### (As Against All Defendants)

178.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

179.   Defendants discriminated against Plaintiff on the basis of his disability in violation of the ADA by treating him differently from and less favorably than non-disabled employees, and by subjecting him to disparate working conditions and other disparate terms and conditions.

180.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

181.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of compensatory and monetary damages and other relief.

182.    Defendants' discriminatory actions in violation of the ADA were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

183.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## SIXTH CAUSE OF ACTION
### Discrimination Based Upon Disability in Violation of
### New York City Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

184.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

185.   Defendants discriminated against Plaintiff on the basis of his disability in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code) by treating him differently from and less favorably than similarly situated employees who were not disabled and by subjecting him to disparate working conditions and other disparate terms and conditions.

186.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

187.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

188.   That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## SEVENTH CAUSE OF ACTION
### Discrimination Based Upon Disability in Violation of
### New York State Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

189.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

190.    Defendants discriminated against Plaintiff on the basis of his disability in violation of the New York State Human Rights Law by treating him differently from and less favorably than similarly situated employees who were not disabled, and subjecting him to disparate working conditions and other disparate terms and conditions.

191.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

192.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

193.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## EIGHTH CAUSE OF ACTION
### Hostile Work Environment
### (As Against All Defendants)

194.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

195.    Defendants discriminated against Plaintiff on the basis of his race, national origin, and disability in violation of Federal, State, and City laws, by treating him differently from and less favorably than similarly situated employees who were not black/African-American, Jamaican, or disabled, and subjecting him to disparate working conditions and other disparate terms and conditions.

196.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Federal, State, and City laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

197.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Federal, State, and City laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

198.    Defendants are liable to Plaintiff for creating this hostile work environment.

199.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## NINTH CAUSE OF ACTION
### Retaliation in Violation of
### Title VII, 42 U.S.C. 2000e et seq.
### (As Against All Defendants)

200.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

201.    In violation of Title VII, 42 U.S.C. 2000e et seq., Defendants retaliated against Plaintiff for filing an EEOC Complaint for its unlawful discrimination, harassment, and hostile work environment, all of which were in violation of Federal, State, and City law.

202.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

203.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Federal laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

204.    Defendants are liable to Plaintiff for this unlawful retaliation.

205.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## TENTH CAUSE OF ACTION
### Retaliation in Violation of
### New York State Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

206.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

207.    In violation of New York State Executive Law § 296 et seq., Defendants retaliated against Plaintiff for filing an EEOC Complaint for its unlawful discrimination, harassment, and hostile work environment, all of which were in violation of Federal, State, and City law.

208.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

209.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of New York State laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

210.    Defendants are liable to Plaintiff for this unlawful retaliation.

211.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## ELEVENTH CAUSE OF ACTION
### Retaliation in Violation of
### New York City Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

212.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

213.    In violation of New York City Administrative Code § 8-107, et seq., Defendants retaliated against Plaintiff for filing an EEOC Complaint for its unlawful discrimination, harassment, and hostile work environment, all of which were in violation of Federal, State, and City law.

214.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

215.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of City laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

216.    Defendants are liable to Plaintiff for this unlawful retaliation.

217.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## TWELFTH CAUSE OF ACTION
### Discrimination based upon National Origin in Violation of
### New York City Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

218.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

219.    Defendants discriminated against Plaintiff on the basis of his national origin (Jamaican) in violation of the New York City Human Rights Law (pursuant to Sec. 8-101, et seq. of the Administrative Code) by treating him differently from and less favorably than similarly situated employees who were not Jamaican, and subjecting him to disparate working conditions and other disparate terms and conditions.

220.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

221.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

222.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

**THIRTEENTH CAUSE OF ACTION**
Harassment
**(As Against All Defendants)**
**(Pendent Jurisdiction)**

223.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

224.    Defendants subjected Plaintiff to, or failed to prevent, remedy and/or stop, unwelcomed harassing conduct and comments made towards Plaintiff in violation of New York State Law and Common Law.

225.    As a direct and proximate result of Defendants' unlawful harassment in violation of State laws, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

226.    As a direct and proximate result of Defendants' unlawful harassment in violation of State laws, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

227.    Defendants are liable to Plaintiff for this unlawful harassment.

228.    By reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, attorney's fees, and any other relief this Court may find just and proper.

## FOURTEENTH CAUSE OF ACTION
### Discrimination Based Upon Race in Violation of
### New York State Human Rights Law
### (As Against All Defendants)
### (Pendent Jurisdiction)

229.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in the above paragraphs of this Complaint as though fully set forth in this paragraph of the Complaint.

230.    At all relevant times, Trump International was an "employer" within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it had more than four (4) persons in its employ at all relevant times.

231.    Plaintiff is an "employee" within the meaning of Executive Law § 292(6).

232.    Defendants discriminated against Plaintiff on the basis of his race (black/African-American) in violation of the New York State Human Rights Law by treating him differently from and less favorably than similarly situated employees who were not black/African-American, and by subjecting him to disparate working conditions and other disparate terms and conditions.

233.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

234.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress.

235.    That by reason of the foregoing, Plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of ONE MILLION DOLLARS ($1,000,000.00), as well as punitive damages, costs, and attorney's fees, and any other relief this Court may find just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff hereby demands a trial by jury on issues of fact and damages stated in this Complaint, and on any amended complaint filed in this action and as allowed under the Constitution and laws of the United States.

Dated: New York, New York
       January 26, 2015

                        Yours, etc.

                    BALLON STOLL BADER & NADLER, P.C.

By:                                   
                    Evan E. Richards, Esq. (ER 8382)
                    Marshall B. Bellovin, Esq. (MB 5508)
                    729 Seventh Avenue, 17th Floor
                    New York, New York 10019
                    212-575-7900
                    File No. 19874.001

TO:    TRUMP INTERNATIONAL HOTEL AND TOWER
       ONE CENTRAL PARK WEST
       NEW YORK, NY 10023

       FRANCIS CALDERON
       ONE CENTRAL PARK WEST
       NEW YORK, NY 10023

       THOMAS AHEARN
       ONE CENTRAL PARK WEST
       NEW YORK, NY 10023